# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Samantha Smith and Daniel Boyd, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>Securus Technologies, Inc.,<br><br>        Defendant. | Case No. 15-cv-550 (SRN/HB)<br><br><br>**MEMORANDUM OPINION AND ORDER** |

Keith J. Keogh and Michael S. Hilicki, Keogh Law, LTD, 55 W. Monroe St., Suite 3390, Chicago, IL 60603; Peter F. Barry and Patrick J. Helwig, Barry & Helwig, LLC, 2701 University Ave SE, Suite 209, Minneapolis, MN 55414, for Plaintiffs.

Monte A. Mills, Greene Espel PLLP, 222 South 9th Street, Suite 2200, Minneapolis, MN 55402; Stephanie A. Joyce, Arent Fox LLP, 1717 K Street, N.W., Washington, DC 20006, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I.      INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment [Doc. No. 18] and Plaintiffs' Motion For Relief Under Fed. R. Civ. P. 56(d) [Doc. No. 35].  For the reasons set forth below, the Court grants Defendant's motion, and denies Plaintiffs' motion.

## II.      BACKGROUND

### A.  The Parties and Phone Calls that Plaintiffs Received

Plaintiffs Samantha Smith and Daniel Boyd (collectively "Plaintiffs") bring this

suit against Defendant Securus Technologies, Inc. ("Defendant" or "Securus") for

allegedly contacting Plaintiffs on their cellular telephones without their prior express

consent, in violation of the Telephone Consumer Protection Act (TCPA) and the

Minnesota Automatic Dialing-Announcing Devices Law (ADAD). (See Am. Compl. ¶ 1

[Doc. No. 8].)

Plaintiffs are natural persons who are citizens of the State of Minnesota. (Id. ¶¶ 7–

8.) Defendant is a Delaware corporation headquartered in Dallas, Texas. (Id. ¶ 9.)

Securus is "a provider of inmate telephone services for over 2,200 correctional facilities,

including many in the State of Minnesota." (Id. ¶ 10.) Inmates use Securus's service in

order to make outgoing calls from the correctional facilities at which they are housed.

Plaintiffs allege that "between November 28, 2014, and December 1, 2014,

Defendant called each of Plaintiffs' cellular telephones several times using an automated

telephone dialing system." (Id. ¶ 32.) As part of some of these calls, Plaintiffs claim that

Securus "delivered a message using an artificial or prerecorded voice." (Id. ¶ 33.) Each

call allegedly informed Plaintiffs about the name of the inmate trying to contact them, the

name of the correctional facility from which the call was being made, and instructions on

how to accept or decline the call. (Id. ¶ 12.) Plaintiffs argue that they did not consent to

receiving any of these non-emergency calls. (Id. ¶¶ 36, 43.) And, thus, Plaintiffs contend

that the "robocalls" violated the TCPA and the ADAD.

### B. Telephone Consumer Protection Act (TCPA) and Minnesota Automatic Dialing-Announcing Devices Law (ADAD)

Under the TCPA, it is unlawful for any person "to make any call (other than a call

made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227 (b)(1)(A)(iii). In order to "make" a call, the party must "cause [the call] to exist." <u>See</u> Black's Law Dictionary 967 (7th ed. 1999) (defining "make" as causing something to exist); <u>see</u> <u>id.</u> (10th ed. 2014) (same).

The TCPA further defines the term "automatic telephone dialing system" to mean "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." <u>Id.</u> § 227(a)(1)(A), (B). The TCPA grants consumers, such as Plaintiffs, a private right of action, with provision for $500 or the actual monetary loss in damages for each violation, whichever is greater, and treble damages for each willful or knowing violation. <u>Id.</u> § 227(b)(3).

The Minnesota ADAD is "virtually identical" to the TCPA. <u>See</u> <u>Van Bergen v.</u> <u>State of Minn.</u>, 59 F.3d 1541, 1548 (8th Cir. 1995). According to the ADAD, "[a] caller shall not use or connect to a telephone line an automatic dialing-announcing device unless: (1) the subscriber has knowingly or voluntarily requested, consented to, permitted, or authorized receipt of the message; or (2) the message is immediately preceded by a live operator who obtains the subscriber's consent before the message is delivered." Minn. Stat. § 325E.27(a). The ADAD defines "automatic dialing-

3

announcing device" to mean "a *device* that selects and dials telephone numbers *and* that, working alone or in conjunction with other equipment, disseminates a prerecorded or synthesized voice message to the telephone number called." Id. § 325E.26, subd. 2 (emphasis added).

### C. Plaintiffs' Claims

Plaintiffs allege that Defendant violated the TCPA and the ADAD by making these calls, and brings this action on behalf of (1) themselves; (2) a class of United States persons who similarly received unauthorized "robocalls" from Securus, within four years of the date the Complaint in this case was filed; and (3) a sub-class of Minnesota persons who also received these unauthorized "robocalls," within six years of the date the Complaint was filed. (See id. ¶¶ 47–61.)

Plaintiffs allege three counts against Securus. In Count I, Plaintiffs claim that Securus negligently violated the TCPA by placing non-emergency telephone calls to Plaintiffs, without their prior express consent, "using an automatic telephone dialing system, or device that has the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or using an artificial or prerecorded voice." (See id. ¶¶ 62–66.) In Count II, Plaintiffs allege that "despite being well aware of the TCPA's prohibitions," Securus placed these "robocalls" in willful violation of the TCPA. (See id. ¶¶ 67–71.) Finally, in Count III, Plaintiffs claim that Defendant violated the Minnesota ADAD by using "an automatic dialing-announcing device to transmit information to Plaintiffs," and by using "multiple prerecorded and/or synthesized voice messages to communicate with Plaintiffs, without Plaintiffs' consent or a statutory right."

4

(See id. ¶¶ 72–76.)

**D. Procedural Posture**

On April 10, 2015, before any discovery was completed in this case, Defendant filed a Motion for Summary Judgment [Doc. No. 18], a supporting brief [Doc. No. 20], and several supporting affidavits and exhibits [Docs. No. 21, 22, 23]. On May 1, 2015, Plaintiffs filed a response brief [Doc. No. 30], with supporting affidavits and exhibits [Doc. No. 31, 32, 33]. A few days later, Plaintiffs also filed a Motion For Relief Under Fed. R. Civ. P. 56(d) [Doc. No. 35], with a supporting memorandum [Doc. No. 36], arguing that the Court should either deny Defendant's motion, or, in the alternative, grant a continuance and allow Plaintiffs an opportunity to conduct relevant discovery. On May 14, 2015, Defendant filed a response brief to Plaintiffs' motion [Doc. No. 45], and a reply brief in relation to its Motion for Summary Judgment [Doc. No. 42]. The Court heard oral argument on both motions on June 3, 2015. On July 13, 2015, Defendant notified the Court via letter that the Federal Communications Commission (FCC) released an order that was related to the issues pending in this case. (See Def.'s Letter [Doc. No. 48].) On July 28, 2015, Plaintiffs filed a letter in response. (See Pls.' Letter [Doc. No. 49].)

**III. Defendant's Motion for Summary Judgment**

**A. Standard of Review**

Summary judgment is proper if, drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett,

5

477 U.S. 317, 322–23 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249–50 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" <u>Celotex Corp.</u>, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed. <u>Id.</u> at 323. However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." <u>Id.</u> at 248. Moreover, summary judgment is properly entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322. Defendant moves for summary judgment on all three of Plaintiffs' claims.

### B. Analysis

In order for Plaintiffs to establish their negligence and willful violation claims under the TCPA, they must prove that Securus "called" their cellular telephone numbers "using an automatic telephone dialing system" or "an artificial or prerecorded voice," without their "prior express consent." <u>Steinhoff v. Star Tribune Media Co., LLC</u>, No. 13-

cv-1750 (SRN/JSM), 2014 WL 1207804, at *2 (D. Minn. Mar. 24, 2014) (citing Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1043 (9th Cir. 2012)).  Similarly, in order for Plaintiffs to establish their ADAD claim, Plaintiffs must demonstrate that Securus used an "automatic dialing-announcing device" to call Plaintiffs, without their prior express consent.  See Minn. Stat. § 325E.27(a).

Defendant argues that all three of Plaintiffs' claims fail for the following five reasons: (1) "Securus did not make the calls and did not select and dial the telephone numbers; rather, the inmate did;" (2) Securus did "not use any 'automatic dialing-announcing device' or 'automatic telephone dialing system' as defined in the TCPA and the ADAD;" (3) "Securus is a 'common carrier' providing telecommunications to the public and as such is exempt from [the] TCPA," and the ADAD; (4) "Securus is required by state and federal law to provide the audible disclosures alleged in the Amended Complaint;" and (5) "Plaintiffs expressly consented to the receipt of the inmate's calls." (See Def.'s Mot. for Summ. J. at 1–2 [Doc. No. 18].)  The Court finds that although the phone calls Plaintiffs received included prerecorded messages, Securus did not initiate or "make" the calls.  Accordingly, Plaintiffs fail to show sufficient evidence "to establish the existence of an element essential" to their case.  Celotex Corp., 477 U.S. at 322.

### 1.  The calls at issue were not "made" by Securus.

Securus claims that it cannot be liable, as a matter of law, for violations of the TCPA or the ADAD because it did not "make" the phone calls that Plaintiffs allegedly received.  (See Pls.' Resp. at 9–11 [Doc. No. 20].)  Specifically, Defendant argues that it did not "make" the calls because Securus did not select and dial Plaintiffs' telephone

numbers; rather, the inmate did. (See id. at 10.) The Court agrees.

Under the TCPA, it is unlawful for any person "to *make* any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A). As the Court noted above, according to Black's Law Dictionary, to "make" a call, the party must "cause [the call] to exist." See Black's Law Dictionary 967 (7th ed. 1999). Similarly, the ADAD also prohibits callers from "us[ing] or connect[ing] to a telephone line [via] an automatic dialing-announcing device," without prior express consent. See Minn. Stat. § 325E.27(a). The ADAD further defines "automatic dialing-announcing device" as "a device that selects and dials telephone numbers." See id. § 325E.26, subd. 2. Thus, under both federal and state law, in order for Defendant to be liable, it must have affirmatively caused the call to exist by selecting and dialing the recipients' telephone numbers.

Here, the inmate who dialed Plaintiffs' phone numbers was the person who "made" the call, not Securus. As Defendant explains, "Plaintiffs do not allege that the Securus system somehow selected and dialed their cellular telephone numbers by some automated process." (Def.'s Mem. at 10 [Doc. No. 20].) In fact, Plaintiffs even acknowledge that the call process begins "when an inmate wants to call a telephone number." (Am. Compl. ¶ 11 [Doc. No. 8].) Defendant's Senior Director for Billing, Dennis Rose, submitted a declaration attesting that Securus's call records demonstrate that the same inmate initiated, dialed, and placed all of the phone calls to Smith and Boyd. (See Rose Decl. ¶¶ 3–4 [Doc. No. 23].) The call records also demonstrate that

Smith and Boyd accepted twelve of the inmate's calls and held conversations with this individual.  (See id.; Exs. 1, 2, "Call Records for Samantha Smith and Daniel Boyd" [Doc. No. 23].)  The inmate used his debit account to pay for most of the calls he placed to Plaintiffs.  (See Rose Decl. ¶ 7 [Doc. No. 23].)  Although the inmate paid for most of his calls, he placed four collect calls to Boyd.  (See id.; Ex. 2, "Call Records for Daniel Boyd" [Doc. No. 23].)  Because Boyd did not have a prepaid account established with Securus to pay for collect calls, Boyd did not accept these four calls.  (See Rose Decl. ¶ 7 [Doc. No. 23].)  In addition to these four collect calls, the inmate also placed one call to Boyd using Securus's "Account Activator feature which allows the inmate to speak to the called party for up to 20 seconds for free and then the called party can immediately set up an account after that conversation," in order to pay for additional phone calls.  (See Rose Rebuttal Decl. ¶ 3 [Doc. No. 43].)  The call is "routed to Customer Service," "at the called party's request," in order for the called party to set up an account.  (See Rose Decl. ¶ 7 [Doc. No. 23].)

Plaintiffs claim that every time the inmate called them, "two separate calls" were actually placed – one by the inmate, and the other by Securus.  (See Pls.' Resp. at 3, 21–22 [Doc. No. 30].)   Thus, Plaintiffs contend that Securus was "at least a co-maker on the call because it exclusively controlled the insertion of the prerecorded voice message into the call."  (See id. at 3.)  The Court disagrees.  The FCC addressed a similar issue in an order that it released on July 10, 2015, entitled In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling and Order, FCC 15-72 (Rel. July 10, 2015) [hereinafter, "2015 FCC Order"].  The FCC

explained that an inmate who uses an inmate telephone service, such as Securus's, to place a collect call is the initiator of the call for purposes of the TCPA. Specifically, the FCC found that "a person who dials the number of the called party or the number of a collect calling service provider in order to reach the called party, rather than the collect calling service provider who simply connects the call, 'makes' the call for purposes of the TCPA." (Id. ¶ 40.) The FCC determined that the calls at issue in the case – inmate collect phone calls – constituted "*single end-to-end communication[s]* during which the collect calling service provider uses a prerecorded message to provide information that the called party uses to determine whether to accept the call." (Id.) (emphasis added).[1]

The same rationale applies to each of the inmate phone calls alleged in this case. Although not all of the phone calls made by the inmate were collect calls, they are sufficiently similar to the inmate phone calls in the FCC order because the calls were initiated when the inmate dialed Plaintiffs' phone numbers. Thus, although Securus inserted a recorded message into each call to inform the Plaintiffs about who was calling and the method of setting up a prepaid account, the phone calls were "single end-to-end communication[s]." (See id.) Accordingly, Securus cannot be held liable, as a matter of law, for violating the TCPA or ADAD. The Court notes that a declaration submitted by Krishna Balantrapu, the Senior Solution Architect for Securus, confirms the Court's finding that only a single call exists between an inmate placing a call and the called party. (See Balantrapu Decl. ¶ 4 [Doc. No. 44].) No contrary evidence was submitted.

---

[1] The Court need not decide if the 2015 FCC Order is retroactive, (cf. Pls.' Letter at 2 [Doc. No. 49]), as the Court holds that this portion of the FCC ruling merely reiterates the plain language of the TCPA.

Accordingly, Plaintiffs' two-call theory is unavailing.

Plaintiffs also argue that Securus clearly may make its own calls, as evidenced by the fact that Defendant stated in its Tariff that "some called parties receive 'an automated courtesy call from [Securus].'" (See id. at 21–22 (citing Keogh Aff., Ex. B, "Securus Tariff" [Doc. No. 33]).) This argument fails for two reasons. First, Plaintiffs take this statement out of context. The Tariff states that "[w]hen the balance in an AdvanceConnect Account reaches twenty dollars ($20) or below, the End User will receive an automated courtesy call from [Securus] notifying the End User with such an announcement." (See Keogh Aff., Ex. B, "Securus Tariff" § 3.4.2 [Doc. No. 33].) However, in order to ever receive a courtesy call from Securus, the "End Users" must first affirmatively set up an AdvanceConnect Account. (See id.) By establishing this account, End Users likely provide consent to be contacted in the future when their account balance is low. Automated phone calls that are placed with the prior express consent of others are exempt from the TCPA and the ADAD.

Moreover, Plaintiffs' reliance on the Tariff, to prove that Securus is a co-maker of the calls, is also misplaced because Plaintiffs do not allege in their Complaint that they received such calls from Securus, informing them of a low balance in their AdvanceConnect Accounts. In fact, Plaintiffs could not allege such a fact because neither Smith nor Boyd had ever set up accounts. Therefore, it is irrelevant that Securus's Tariff states that parties may receive an automated courtesy call if their account balance is low.

Finally, Plaintiffs argue that Securus is a co-maker of the calls because

Defendant's Senior Director of Billing, Rose, admitted that Securus "'placed' an automated call via its Account Activator to Boyd to set up an account." (See Pls.' Resp. at 21 [Doc. No. 30].) Plaintiffs appear to misread Rose's declaration. In his initial declaration, Rose stated that "[i]n one instance, the call was placed via Account Activator which is a free call that invites, after identifying the calling inmate, the called party to set up an account to pay for the call." (See Rose Decl. ¶ 7 [Doc. No. 23].) Plaintiffs misread this statement to imply that the Account Activator itself placed the call to the called party. (See Pls.' Resp. at 21 [Doc. No. 30].) In his rebuttal declaration, Rose clarified that the "Account Activator does not and cannot dial telephones. It is an account setup feature that is initiated after the inmate dials the telephone number of his intended called party who does not have a Securus billing account." (Rose Rebuttal Decl. ¶ 4 [Doc. No. 43].) As the Court noted above, the Account Activator feature "allows the inmate to speak to the called party for up to 20 seconds for free and then the called party can immediately set up an account after that conversation," in order to pay for additional phone calls. (See id. ¶ 3.) This clarification is consistent with Rose's initial description of the Account Activator call, as a call that is "routed to Customer Service," "at the called party's request," so the called party may set up a billing account. (See Rose Decl. ¶ 7 [Doc. No. 23].) Therefore, Plaintiffs erroneously argue that Securus "initiated" the single Account Activator call to Boyd. In sum, the Court finds that all of the alleged calls were "made" by an inmate, not Securus.[2]

---

[2]     Accordingly, the parties' arguments about the applicability of the common carrier exemption are immaterial. The FCC recently clarified in its July 10, 2015 order that the

**2. The calls at issue were not made with an "automatic telephone dialing system," or an "automatic dialing-announcing device," as defined in TCPA and ADAD.**

Not only were the calls not made by Securus, but they were also not made with an "automatic dialing-announcing device" or "automatic telephone dialing system," as defined in the TCPA and the ADAD. (See Def.'s Mem. at 14–17 [Doc. No. 20].)

**a. TCPA's "Automatic Telephone Dialing System"**

As noted above, the TCPA outlaws non-emergency phone calls made "using any automatic telephone dialing system or an artificial or prerecorded voice," 47 U.S.C. § 227(b)(1)(A); and the statute further defines "automatic telephone dialing system" as equipment that has the capacity to (1) "store or produce telephone numbers to be called, using a random or sequential number generator;" *and* (2) "dial such numbers." 47 U.S.C. § 227(a)(1)(A) and (B).

Plaintiffs appear to concede that Securus did not use a random or sequential number generator to dial their cell phone numbers.[3] (See Pls.' Resp. at 24 [Doc. No.

---

common carrier exemption only applies if the common carrier is the "person," or entity, *making* the phone calls. For instance, the FCC explained that subsequent phone calls *dialed* by inmate telephone service companies "in an effort to establish a prepaid account with the called party" are exempt under the TCPA if they also satisfy certain conditions. (2015 FCC Order ¶¶ 41, 45 [Doc. No. 48-1].) Because there is no genuine factual dispute that all of the alleged phone calls were made by an inmate and not Securus, the parties' arguments about the common carrier exemption and the FCC's recent ruling are irrelevant.

[3]     Insofar as Plaintiffs have not abandoned the argument that Defendant used an automatic telephone dialing system, the Court finds that, as a matter of law, it is clear that Securus did not use such a system to contact Plaintiffs. Although Plaintiffs claim that the "mere fact that an inmate is involved in triggering the chain of events that prompted the system" to call Plaintiffs "does not make it non-automated," (Pls.' Resp. at 24–25 [Doc. No. 30]), the Court disagrees. Precisely because an inmate must initiate the chain of

13

30].)  Rather, Plaintiffs contend that Defendant violated the TCPA either because the

equipment Securus uses has the "capacity" to be an automatic telephone dialing system,

or because Securus delivered prerecorded voice messages on Plaintiffs' cell phones.  (See

id. at 3, 24.)

Plaintiffs argue that whether Defendant's system has the capacity to be an

automatic telephone dialing system, at best, presents a genuine issue of material fact, and

discovery should be permitted.  (See id. at 3.)  The Court disagrees.  According to the

uncontroverted testimony of Defendant's Director of Regulatory and Government

Affairs, Curtis Hopfinger, and Defendant's Senior Solution Architect for Securus, Krisha

Balantrapu, the system is very clearly not an automatic telephone dialing system.  (See

Hopfinger Decl. ¶ 7 [Doc. No. 21]; Balantrapu Decl. ¶ 7 [Doc. No. 44].)

In response, Plaintiffs contend that one of Securus's patent applications "clearly

describes, in detail, what could only be defined as an automated system; namely, a

system with the present capacity to store and automatically dial telephone numbers."

(See Pls.' Resp. at 24 [Doc. No. 30]; see Keogh Decl., Ex. C, "Securus Patent" [Doc. No.

33].)  Specifically, Plaintiffs assert that because the application discusses a computer-

based platform that has the capacity to notify a third party of an inmate's incarceration

and/or transfer and other transactions, then this functionality satisfies the statutory

"capacity" requirement.  (See Pls.' Resp. at 6–7 [Doc. No. 30].)  However, Balantrapu

explains that the technology described in the patent application "is not [relevant] for call

_____

events, by dialing Plaintiffs' phone numbers, Securus' system is *not* an automatic
telephone dialing system that "dial[s] numbers without human intervention."  See Griffith
v. Consumer Portfolio Serv., Inc., 838 F. Supp. 2d 723, 726 (N.D. Ill. 2011).

completion," and it is immaterial for analyzing "the call path." (See Balantrapu Decl. ¶ 7 [Doc. No. 44].)  Significantly, the call path determines whether Securus "made" or initiated a call.  Moreover, Balantrapu attests that the technology at issue in the patent application "is not even in place at Hennepin County Adult Detention Center where the inmate [who made the calls to Plaintiffs] was housed." (Id. ¶ 8.)  Therefore, the Court finds that this patent application is irrelevant to the facts of this case and Defendant's equipment does not satisfy the statutory definition of an automatic telephone dialing system.

Plaintiffs also argue that a TCPA violation occurred because Plaintiffs received prerecorded notifications from Securus.  According to Plaintiffs, a TCPA violation may occur when non-emergency calls are placed using *either* an automatic telephone dialing system *or* an artificial or prerecorded voice.  47 U.S.C. § 227(b)(1)(A); see Vaccaro v. CVS Pharmacy, Inc., No. 13-CV-174-IEG RBB, 2013 WL 3776927, at *5, n.2 (S.D. Cal. July 16, 2013) (explaining that "[b]ecause the provision is written in the disjunctive, plaintiffs can state a claim under the TCPA by allegin[g] the use of (1) an 'artificial or prerecorded voice' *or* (2) an ATDS.")  Since Defendant does not appear to dispute that Plaintiffs received prerecorded notifications, Plaintiffs assert that Securus violated the TCPA.  The Court disagrees.

The TCPA requires that the liable party not only use an artificial or prerecorded voice, but also, *make* the call.  Because Securus did not make the call, Plaintiffs TCPA claims also fail because they do not satisfy the condition precedent for invoking the artificial or prerecorded voice element of the statute.

### b.  ADAD's "Automatic Dialing-Announcing Device"

Plaintiffs also fail to state a claim, as a matter of law, under the ADAD, because there is no dispute of material fact that Securus's device did not select and dial Plaintiffs' cell phone numbers.  A party is only liable for violating the ADAD if it uses an "automatic dialing-announcing device" to call an individual; and an automatic dialing-announcing device is further defined as "a *device* that selects and dials telephone numbers and that, working alone or in conjunction with other equipment, disseminates a prerecorded or synthesized voice message to the telephone number called."  Minn. Stat. § 325E.26, subd. 2 (emphasis added).

Securus's telephonic system does not fulfill the necessary requirements of an "automatic dialing-announcing device" as defined in the state statute.  As Securus's Director of Regulatory and Government Affairs, Hopfinger, explained, "inmates use the keypad to dial the number of the called party.  Securus telephones do not contain a feature or functionality that could electronically dial a telephone number."  (See Hopfinger Decl. ¶ 7 [Doc. No. 21].)  Because Securus's technology does not even have the "capacity to dial numbers without human intervention" Griffith, 838 F. Supp. 2d at 726, the Court finds that Plaintiffs' ADAD claim also fails for this reason.

In sum, the Court holds that Securus is not liable, as a matter of law, for violating the TCPA because it did not "make" phone calls using a system with the capacity to be an "automatic telephone dialing system," and it did not "make" calls that included a prerecorded message.  Similarly, Securus is not liable, as a matter of law, for violating the ADAD because it did not "make" phone calls using an "automatic dialing-announcing

16

device."

### 3. Defendant's Additional Arguments

The Court finds that because Securus did not "make" or initiate the alleged phone calls, Plaintiffs' claims fail as a matter of law. Therefore, the Court need not address Defendant's additional arguments that favor summary judgment, such as the application of the common carrier exemption, Plaintiffs' consent to the inmate phone calls, and the fact that the disclosures are mandated by state and federal law. The Court notes, however, that federal and state law mandate Securus to make pre-connect audible disclosures. See 47 C.F.R. § 64.710(a); Minn. PSC Order (July 26, 2007) [Doc. No. 24-2]. While Plaintiffs correctly argue that neither the FCC's regulations, nor the Minnesota Public Utilities Commission's order require the use of a prerecorded or automated voice, these laws also do not explicitly prohibit prerecorded or automated voices. (See Pls.' Resp. at 16 [Doc. No. 30].) Regardless of the disclosures mandated pursuant to federal and state law, the Court finds that Plaintiffs' claims fail as a matter of law because an inmate made every phone call alleged. Accordingly, the Court grants Defendant's Motion for Summary Judgment.

## IV.    Plaintiffs' Fed. R. Civ. P. 56(d) Motion

In addition to opposing Defendant's Motion for Summary Judgment, Plaintiffs also filed a Motion for Relief Under Fed. R. Civ. P. 56(d), asking the Court to deny Defendant's motion or, in the alternative, to grant a continuance to allow Plaintiffs an opportunity to conduct discovery related to Defendant's motion. (See Pls.' Mot. For Relief [Doc. No. 35].)

### A. Standard of Review

Federal Rule of Civil Procedure 56(d) provides that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). In order for the Court to grant such relief, Plaintiffs must "show 'what specific facts further discovery might unveil.'" United States ex. rel. Bernard v. Casino Magic Corp., 293 F.3d 419, 426 (8th Cir. 2002) (quoting Stanback v. Best Diversified Prods., Inc., 180 F.3d 903, 911 (8th Cir. 1999)).

It is not enough for Plaintiffs to "set forth some facts [they] 'hope[] to elicit from further discovery.'" Toben v. Bridgestone Retail Operations, LLC, 751 F.3d 888, 895 (8th Cir. 2014) (quoting Cal. ex rel. Cal. Dep't of Toxic Subs. Control v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998)). The Eighth Circuit has explained that "'the mere assertion that evidence supporting a party's allegation is in the opposing party's hands is insufficient to justify a denial of a summary judgment motion on [Rule 56(d)] grounds.'" Anzaldua v. Ne. Ambulance & Fire Prot. Dist., No. 14-1850, 2015 WL 4140039, at *11 (8th Cir. July 10, 2015) (alteration in original) (quoting Jones v. City and County of Denver, Colo., 854 F.2d 1206, 1211 (10th Cir. 1988)).

Rather, Plaintiffs must "show [ ] 'that the facts sought exist.'" Toben, 751 F.3d at 895 (quoting Campbell, 138 F.3d at 779); see also Janis v. Biesheuvel, 428 F.3d 795, 800 (8th Cir. 2005) (explaining that "'[a] party invoking [Rule 56(d)'s] protections must do so in good faith by affirmatively demonstrating why he cannot respond to a movant's

affidavits as otherwise required . . . and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'").

Although Rule 56 permits a district court to defer ruling on a summary judgment motion, the rule "does not *require* trial courts to allow parties to conduct discovery before entering summary judgment." United States ex rel. Small Bus. Admin. v. Light, 766 F.2d 394, 397 (8th Cir. 1985) (per curiam) (emphasis added). "The decision to grant or deny . . . relief [under Rule 56(d)] is within the sound discretion of the Court." Textron Fin. Corp. v. Weeres Indus. Corp., No. 10-cv-2070 (JRT/LIB), 2011 WL 2682901, at *9, n.2 (D. Minn. June 17, 2011) report and recommendation adopted, 2011 WL 2682895 (D. Minn. July 11, 2011) (citing Allen v. Bridgestone/Firestone, Inc., 81 F.3d 793, 797 (8th Cir. 1996)); see Anzaldua, 2015 WL 4140039, at *11.

## B. Analysis

Plaintiffs claim that they "need information about the mechanics of how calls are made through [Securus's] system, *i.e.*, whether Securus separately called Plaintiffs and played the prerecorded messages at issue, or whether the inmate's attempted call and Securus's pre-recorded messages are all part of a 'single call.'" (See Pls.' Mem. in Support at 2–3 [Doc. No. 36].) In support of their motion, Plaintiffs filed a declaration by Keith Keogh, one of Plaintiffs' lawyers. (See Keogh Decl. [Doc. No. 38].) Keogh attests that "Plaintiffs were able to find three limited documents that appear to contradict Securus's assertions that its system does not automatically dial numbers." (See id. ¶ 2.) Specifically, Keogh contends that the following three documents demonstrate that

19

Securus co-made the alleged phone calls: (1) Securus's November 2012 Comments to the FCC; (2) Securus's Tariff; and (3) Securus's patent.  (See Keogh Decl. ¶ 2, n.1 [Doc. No. 38].)

Upon review of these three documents, the Court finds that they neither show that Securus "made" the alleged phone calls, nor do they show that Securus was a "co-maker" of these calls.  Rather, each document confirms that an inmate dialed and initiated every phone call.

For instance, in Securus's Comments to the FCC, Defendant explicitly stated that it "has no control over whether a call is initiated, when it is initiated, the number to which a call is made, or the content of the call."  (See Keogh Aff., Ex. A "Securus' Comments" at 6 [Doc. No. 33].)  Furthermore, Defendant explained it only delivers its prerecorded notifications to individuals to whom "an inmate has initiated a call," by dialing that individual's phone number.  (Id. at 5.)  Although Securus admitted in these Comments that it uses a prerecorded announcement and an automated interactive response system to inform the called party that an inmate is trying to make contact, that is insufficient to "illustrate that the Securus call is separate from the inmate call," (cf. Pls.' Resp. at 21 [Doc. No. 30]), or establish a genuine issue of material fact about who places the phone call (the inmate or Securus).  Nor is it sufficient to establish that Securus possesses any documents or knowledge proving that it is a "co-maker" of the call.  See Toben, 751 F.3d at 895.

Similarly, Securus's Tariff also does not establish that Defendant is a co-maker of the inmate phone calls.  As the Court explained above, although Securus's Tariff notes

that individuals may receive an automated courtesy call if their account balance is low, Plaintiffs do not even allege that they received any such calls in this case – particularly because neither Smith nor Boyd had established accounts with Securus.

And, finally, Securus's patent application is not relevant for the Court's inquiry in this case because it does not pertain to "the call path" or "call completion."  (See Balantrapu Decl. ¶ 7 [Doc. No. 44].)  Therefore, Plaintiffs fail to plausibly argue that further discovery could reveal relevant information.  See Anzaldua, 2015 WL 4140039, at *11.  Accordingly, the Court agrees with Defendant that nothing in Plaintiffs' affidavit justifies postponement.  (See Def.'s Mem. in Opp'n at 5 [Doc. No. 45].)

Plaintiffs contend that this case is similar to others in which courts have granted Rule 56(d) motions, such as Nelson v. Am. Home Assurance Co., No. 11-cv-1161 (RHK/FLN), 2011 WL 2397160 (D. Minn. June 13, 2011), and Iverson v. Johnson Gas Appliance Co., 172 F.3d 524 (8th Cir. 1999).  However, the Court finds that Nelson and Iverson are distinguishable.

For instance, in Nelson, this Court granted the defendant's Rule 56(d) motion because the defendant had not yet had the opportunity to develop "facts supporting its defense," and the defendant had adequately "identif[ied] five specific factual areas in which it need[ed] discovery in order to defend itself."  See 2011 WL 2397160, at *1.  In contrast, here, Plaintiffs failed to identify a genuine issue of material fact.  Although Plaintiffs have not had an opportunity to conduct discovery, Securus has filed several affidavits and declarations, under oath, that describe the call path and telephone system used.  Plaintiffs have no good faith basis to rebut these affidavits and declarations.  See

21

Janis, 428 F.3d at 800.  Therefore, further discovery would not uncover additional relevant facts about "threshold . . . issues" in this case.  Cf. Nelson, 2011 WL 2397160, at *2 (explaining that further discovery was warranted because "there [were] numerous threshold coverage issues that . . . need[ed] to be resolved").

This case is also distinguishable from Iverson.  In Iverson, the Eighth Circuit held that the plaintiff's Rule 56(d) motion was improperly denied by the district court because the district court "did not address whether [the plaintiff] had an adequate opportunity to pursue his fraud and contract claims."  See 172 F.3d at 531.  The Iverson Court noted that the plaintiff's "specific discovery requests may well have been subject to attack, but this did not eliminate the need for the [district] court to address the discovery demands and whether or not they were necessary and reasonable."  Id.

Here, the Court has thoroughly discussed why Plaintiffs' request for discovery is unnecessary and futile.  Plaintiffs' affidavit does not demonstrate that "the facts sought exist."  Toben, 751 F.3d at 895.  In other words, Plaintiffs fail to show that any facts exist that substantiate Securus being a co-maker on the inmate phone calls.  Because the affidavit supporting Plaintiffs' Rule 56(d) motion provides only "'speculative hope' of finding evidence to support [their] claim," the Court denies Plaintiffs' motion.  See Toben, 751 F.3d at 895 (quoting Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1566–67 (Fed. Cir. 1987) (explaining that "[s]ummary judgment need not be denied merely to satisfy a litigant's speculative hope of finding some evidence [through discovery] that might tend to support a complaint.  Further litigation in this case not only would put the parties to unnecessary expense but also, equally important, would be

wasteful of judicial resources.")).

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED THAT:**

1. Defendant's Motion for Summary Judgment [Doc. No. 18] is **GRANTED**; and

2. Plaintiffs' Motion For Relief Under Fed. R. Civ. P. 56(d) [Doc. No. 35] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  August 4, 2015                    s/Susan Richard Nelson
                                          SUSAN RICHARD NELSON
                                          United States District Judge